(No. 21611.—

ORPHA ANDERSON, Defendant in Error, *vs.* THE INTER-STATE BUSINESS MEN'S ACCIDENT ASSOCIATION OF DES-MOINES, IOWA, Plaintiff in Error.

*Opinion filed December 22, 1933.*

540

DeYoung, J., dissenting.

Moses, Kennedy, Stein & Bachrach, (Walter Bachrach, Philip Glick, and Albert Langeluttig, of counsel,) for plaintiff in error.

Lee D. Mathias, and Clyde L. Todd, for defendant in error.

Mr. Justice Jones delivered the opinion of the court:

Orpha Anderson, plaintiff, as beneficiary in an accident insurance policy, recovered a judgment in the superior court of Cook county against defendant, the Inter-State Business Men's Accident Association of Des Moines, Iowa. The Appellate Court for the First District affirmed the judgment, and the cause is here on *certiorari*.

The suit was instituted in 1921 to recover under the policy for the alleged death of plaintiff's husband, Ralph A. Anderson, the insured. It is claimed he was accidentally drowned in Lake Michigan on June 11, 1919. The declaration consisted of a single count, setting out the policy *in hæc verba*. It averred the issuance of the policy to Anderson and his death "on June 11, 1919, in Lake Michi-

gan * * * by reason of physical injuries effected by accidental means independently of all other causes." It also averred the delivery of notice and proof of death to defendant on August 11, 1919, and compliance with all the terms of the policy by the insured and the beneficiary. A demurrer to the declaration was overruled and defendant pleaded the general issue.

Defendant urges that plaintiff ought not recover because she did not furnish the affirmative proof of loss required by the policy; the declaration does not state a cause of action; the evidence, when taken cumulatively, is as a matter of law insufficient to warrant the verdict; there was error in the giving and refusal of instructions, and the trial judge made prejudicial remarks. These contentions will be considered in the order named.

The policy fixed the indemnity in case of death at $5000 and contained the provision, "the insurance provided shall cover only in the event that death shall result within ninety days from the date of the accident." Other standard provisions required by law to be inserted in such policies were set out in the language of the statute. Those provisions pertinent to the issues here are as follows:

"4. Written notice of injury or of sickness on which claim may be based must be given to the association within twenty days after the date of the accident causing such injury or within ten days after the commencement of disability from such sickness. In the event of accidental death immediate notice thereof must be given to the association.

"5. Such notice given by or in behalf of the insured or beneficiary, as the case may be, to the association at its home office in the city of Des Moines, Iowa, or to any authorized agent of the association, with particulars sufficient to identify the insured, shall be deemed to be notice to the association. Failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to give

such notice and that notice was given as soon as was reasonably possible.

"6. The association, upon receipt of such notice, will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. If such forms are not so furnished within fifteen days after the receipt of such notice, the claimant shall be deemed to have complied with the requirements of this policy as to proof of loss, upon submitting, within the time fixed in the policy for filing proofs of loss, written proof covering the occurrence, character and extent of the loss for which claim is made.

"7. Affirmative proof of loss must be furnished to the association * * * within ninety days after the date of such loss."

Anderson, the insured, lived in Traverse City, Michigan. He was an undertaker and florist, thirty-eight years of age. Besides other business interests, he was engaged in erecting a garage to be used in a taxicab business. His assets amounted to about $33,000 and his obligations were about $13,000. He was married and had two children. On June 8, 1919, he left Traverse City for Chicago by train, primarily to purchase materials for the building he was erecting. On arrival in Chicago June 9 he registered at the LaSalle Hotel and spent the day attending to various business matters. In the evening he had dinner and attended a theatre with a man he had business dealings with during the day. He wrote his wife he would leave Chicago Tuesday night. On Tuesday, the 10th, he transacted business matters until shortly after 5:00 o'clock, and at 7:45 P. M. he took passage on the steamship *Alabama* for Muskegon, Michigan. Between 8:00 and 9:00 o'clock he was seen in the dining room of the boat by Captain Mackey, of the Goodrich Steamship Company, who knew him well. The *Alabama* docked at Grand Haven about 3:30 A. M. on the 11th and reached Muskegon at a later hour. Anderson was not seen to leave the boat at either of those ports. When the boat arrived at Muskegon his

clothing and other belongings, except one suit and his shoes, were found in the stateroom. His traveling bag was also there. Less than two dollars was found in his purse. There is evidence that he wore a large diamond ring and was in the habit of carrying a roll of bills in his pocket. Anderson's wife conducted a thorough search for him, going to the extent of hiring the services of two well known detective agencies. Accounts of his disappearance appeared in local and Chicago papers. Hand-bills were distributed containing his picture and other matter to aid in identification, but he was never seen or heard from after his disappearance on the boat. He occasionally played cards for money but was not a confirmed gambler. No evidence appears that he was being pressed by any of his creditors or suffering any financial embarrassment from any other source. When he left Traverse City his bank balance was $1364.65. His home life had been happy, except about a year prior to his disappearance he became involved with another woman, which led to a brief period of strained relations with his wife. After this difficulty his wife forgave him, and the record shows he was fond of and attentive to his family. At the time the case was tried, in May, 1930, he had been absent and unheard of almost eleven years.

Plaintiff introduced in evidence the insurance policy and a written notice purporting to be a proof of loss, in the following language:

*"To the Inter-State Business Men's Accident Association:*

"You are hereby notified that Ralph A. Anderson took passage on the steamship *Alabama* at Chicago, Illinois, on the evening of June 10, 1919, for Muskegon, Michigan, and that he is believed to have been lost overboard while in passage from Chicago to Muskegon on the night of June 10 or the morning of June 11, 1919, and that he is dead and that his death was caused by violence or accident.

"He held a policy in your company No. 145834 and the undersigned is beneficiary in case of death.

"Dated August 8, 1919, Traverse City, Michigan.

(Mrs.) ORPHA E. ANDERSON."

It was stipulated that this so-called proof of loss was received by defendant on August 11, 1919, and in answer thereto it wrote plaintiff the following communication:

"HEALTH AND ACCIDENT INSURANCE

"Inter-State Business Men's Accident Association of Des Moines, Iowa.                                                                          *August 18, 1919.*
*"Mrs. Orpha E. Anderson, Traverse City, Mich.*

"DEAR MADAM—In compliance with your request of the 8th inst. we are enclosing herewith a set of claim blanks, with the understanding that in furnishing them the association does not admit of any liability in connection with any claim which may be filed, neither is the act of furnishing the blanks to be construed as a waiver upon the part of the association.

"It does not appear from the facts presented in your notice that there is any liability upon the part of the association on account of the disappearance of Mr. Anderson.

"Assuring you that we very much regret to learn of the unfortunate disappearance of Mr. Anderson, I am
                                "Yours truly,
                                        E. L. BECK, *Mgr. Claim Dept."*

Plaintiff did not execute the blanks sent her by defendant and did not furnish other evidence of loss except the communication of August 8. The sufficiency of plaintiff's communication as notice is not denied, but it is contended that it is not a proof of loss as required by the policy. It was furnished to defendant within fifty-eight days of the alleged death of the insured, and the question before us is whether it is a sufficient compliance with the terms of the policy as to proof of loss.

Paragraph 7 of the standard provisions of the policy requires the furnishing of "affirmative proof of loss." By "affirmative proof" is meant such evidence of the truth of the matters asserted as tends to establish them, and this regardless of the character of the evidence offered. (*Jenkins* v. *Hawkeye Commercial Men's Ass'n,* 147 Iowa, 113, 124 N. W. 199.) In *Orr* v. *National Fire Ins. Co.* 52 S. Dak. 513, 210 N. W. 774, the statute required sworn proof of loss. An unverified proof was accepted by the company's agent. The insurance company treated the claim as a proof

of loss and denied liability on the policy. After the suit was started, and after the time for filing proof of loss had expired, the defendant for the first time questioned its sufficiency. That contention was held "too utterly trivial to have been made in good faith or to merit consideration," because the company was not in any manner prejudiced by the informality or insufficiency of the proof of loss.

In *VanEman* v. *Fidelity and Casualty Co. of New York,* 201 Pa. 537, it was contended that proof of loss had not been furnished the company within two months after the insured's death. Sixteen days after the death the company was notified by letter that VanEman had died from the effects of an injury sustained while riding in a passenger coach on a certain railroad on May 27, 1927, and that the widow, as the beneficiary named in the policy, made claim for $10,000. The company denied liability and upon suit stood upon the strict terms of the condition in the policy that affirmative proof must be furnished to it. The court held that as to the affirmative proof required, "the condition does not provide that the proof is to be in writing nor by whom it is to be furnished, but the evidence is that such proof in writing did reach the company, which acted upon it by having its own surgeon take part in the post-mortem examination. * * * The company, before receiving this proof, had acted upon what had been furnished to it by its own agent and nothing more was required of the appellee. In such a case the law requires nothing vain or useless. The appellant's defense that it did not receive affirmative proof of the insured's death is without merit and the judgment against it is affirmed."

In *Griffin* v. *Northwestern Mutual Life Ins. Co.* 250 Mich. 185, 229 N. W. 509, the insured disappeared on a sea journey and the only proof furnished the defendant as to the manner and place of death was as follows: "Disappeared December 30, 1915, enroute from New York to Boston, New England Steamship Company, steamer *Provi-*

*dence."* The court held: "The purpose of proof of death is to enable the insurer to form an intelligent estimate of his rights and liability under the contract. * * * Plaintiff made such proof as she could. Following this, defendant wrote a letter to plaintiff's counsel. The letter shows that defendant had full appreciation of plaintiff's difficulties and full understanding of the matter in issue. It made no claim plaintiff had not furnished such proof as she could. The proofs of death were here sufficient."

In *American National Ins. Co.* v. *Hicks,* 35 S. W. (2d) 128, the court said: "If the defendant in error could not possibly by the use of reasonable means and due diligence have procured the information necessary for her to have in order to make due proof of the death of Archie Hicks, the law would not impose on her as a duty the attempt of doing an impossible thing."

It may be stated as a general rule that sufficient proof of death is made by evidence in any form which is substantial and trustworthy enough to enable the insurer to form an intelligent estimate of his rights and liability under his contract, and any succinct and intelligent statement giving the information called for by the policy, whether verified or not or whether by eye-witnesses or not, in the absence of some policy or statutory requirement to the contrary, is sufficient to put the insurer upon inquiry to determine whether he is liable. (5 Joyce on Ins. (2d. ed.) sec. 3277.) The rule is well settled that contracts of insurance are to be construed liberally in favor of the insured and strictly against the insurance company. *Budelman* v. *American Ins. Co.* 297 Ill. 222.

Neither the policy nor the statute requires a claimant to use a prescribed form in making proof of loss, nor is it required that the proof of loss shall be verified. There is no provision that any penalty or forfeiture shall follow a failure to use the particular forms furnished by the insurer. In the absence of any policy or legal requirement,

courts are not authorized to place such a construction upon the language of the policy as would virtually cause a forfeiture and prevent recovery by one who in apparent good faith furnished proof sufficient to apprise the insurer as to the occurrence, character and extent of the loss. The document presented by plaintiff to defendant dated August 8 contained all the essential and necessary information to enable defendant to conduct an inquiry of its own and determine its liability. It gave all the information that was available. It detailed the time when and the place where the insured met his death, including its cause, as nearly as they could be defined and as fully as it was possible for plaintiff to state. Defendant did not communicate with plaintiff until one week after receipt of the document. In its reply no objection was raised to its form or contents. No request was made for further particulars or additional proof. It is urged that sending blank forms to plaintiff was equivalent to a request that they be executed by her. No presumption of that kind can be raised against her. The association treated her document as a statement of facts and replied to her that "it does not appear from the facts presented in your notice that there is any liability upon the part of the association on account of the disappearance of Mr. Anderson." From this letter it is apparent that defendant had considered plaintiff's communication and had determined that under the facts therein stated there was no liability under the policy. After definitely reaching this conclusion and unequivocally notifying plaintiff to that effect, it cannot, at a trial eleven years afterwards, be heard to object to the form or contents of the document upon which it acted in denying liability. *Continental Ins. Co.* v. *Ruckman*, 127 Ill. 364; *Continental Life Ins. Co.* v. *Rogers*, 119 id. 474.

The facts in the case of *Feder* v. *Midland Casualty Co.* 316 Ill. 552, showed that the insured was drowned and that his body was recovered and identified by the insurance

agent who wrote the policy. No written notice of death or proof of loss was made to the company and the premiums theretofore due on the policy had not been paid. It was held that oral notice to the agent of the company was not a compliance with the terms of the policy which required written notice of the accident and that there was an entire failure to furnish the proofs of loss required. It was also held that to recover under an alleged waiver of proof of loss the waiver must be pleaded. The decision in that case is relied upon by defendant, but it has no application to the facts in the case at bar. Here the premiums were paid and notice and proof of loss were furnished. There is no question of waiver in this case. The question is whether the document submitted by plaintiff was a sufficient compliance with the requirement to furnish proof of loss. The doctrine of estoppel is incidentally involved but the doctrine of waiver is not.

Defendant contends that the declaration fails to state a cause of action because it does not aver the accident caused Anderson's death within ninety days, and that in order to bring herself within the terms of the policy such an averment was necessary. Alleging that Anderson came to his death by accidental means on June 11, 1919, in Lake Michigan is equivalent to saying that he was drowned and that his drowning and death were simultaneous, as they must have been. Involuntary death by drowning is death by external, violent and accidental means. (*Healey* v. *Mutual Accident Ass'n,* 133 Ill. 556.) Where the insured suffers an injury which causes death and there is no proof in the record from which it can be determined whether the injury was accidental or self-inflicted, the presumption is that the injury was accidental and not self-inflicted. (*Wilkinson* v. *Ætna Life Ins. Co.* 240 Ill. 205.) The declaration stated a good cause of action, and the rule obtains that even though the averments, taken by themselves, may bear two different constructions, yet when coupled with the verdict

they are to be interpreted in that sense which will sustain it. *Kelleher* v. *Chicago City Railway Co.* 256 Ill. 454; *Sargent Co.* v. *Baublis,* 215 id. 428.

The insured's financial obligations, compared with his assets, were not excessive. He was apparently prosperous. He was engaged in two lines of business and expanding his activities by taking on another. He had a substantial bank balance. It was planned that on the trip to Chicago his wife and a married couple were to accompany him. On account of their inability to go he went alone, and the evidence tends to show his intention was to return. Taken cumulatively, the testimony was sufficient, as a matter of law, to entitle plaintiff to have the case submitted to the jury. The death of Anderson was the principal controverted fact in the case. The evidence presented was sufficient to warrant the verdict returned by the jury. The affirmance of the judgment by the Appellate Court concludes this court on questions of fact. *Central Trust Co.* v. *Hagen,* 339 Ill. 384; *Weisguth* v. *Supreme Tribe of Ben Hur,* 272 id. 541.

Plaintiff's instructions Nos. 2, 5 and 6 told the jury that the policy provisions as to "immediate notice" and "proof of loss within ninety days" mean that such notice and proof must be given within a reasonable time, and "proof of loss" means such proof as is reasonable "in view of all the facts and circumstances connected with the case." It is urged that these instructions were erroneous in not confining the jury to the evidence and that they allowed the jury to consider facts and circumstances outside the evidence. The instructions did not submit any question of fact to the jury. Their purpose was to define the meaning of the terms mentioned. The eighth instruction, with respect to notice and proof of death, expressly confines the jury to the evidence. The instructions are to be considered as a series. The court did not err in giving them. The objections raised on constitutional grounds to instruction

No. 8 were passed upon by this court in its former opinion. 342 Ill. 612.

The subject matter of defendant's offered instruction No. 16 was included in another instruction given at its instance. It also contained an erroneous statement of fact with reference to the averments of the declaration. The court did not err in refusing it. Instruction No. 17 stated that the proof of loss furnished by plaintiff did not constitute affirmative proof of loss within the meaning of the policy. In view of our holding the court was justified in refusing that instruction. The 18th instruction referred to the limitations imposed by the policy, confining its operation to death from physical injury by accidental means, and then only upon condition that affirmative proof of loss be furnished defendant within ninety days thereafter. Defendant's contention on these issues cannot be upheld and the instruction was properly refused. The 19th instruction told the jury that affirmative proof of loss, within the meaning of the policy, means a sworn statement signed by plaintiff or someone in her behalf. In the absence of a specific policy or statutory requirement this is not the law. The instruction was properly refused.

Defendant complains that the trial judge improperly examined witnesses and made prejudicial remarks during the course of the trial. A considerable latitude must be allowed the trial court in conducting a trial, and it is only where his conduct or remarks are such as would ordinarily create prejudice in the minds of the jury that they constitute ground for reversal. (*Featherstone v. People,* 194 Ill. 325; *Schaffner v. Massey Co.* 270 id. 207.) There were a large number of witnesses and the testimony was voluminous. While the the trial judge at times exhibited impatience, we do not think his conduct was prejudicial or detrimental to a fair trial.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. Justice DeYoung, dissenting.