Elmer J. Reske, Conservator of the Estate of Virginia Lavery, Incompetent, and Robert Lavery, Plaintiffs-Appellants, v. Esther Klein, d/b/a Woodland Valley Boarding & Training Stables, Defendant-Appellee.

Gen. No. 48,241.

First District, First Division.

December 11, 1961.

Rehearing denied January 26, 1962.

F. Patrick Conlon and Philip E. Ryan, of Chicago (Philip E. Ryan and John F. McBride, of counsel), for appellants.

Ross & Kralovec, of Chicago, for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

In a proceeding to recover damages for injuries sustained by Virginia Lavery in falling off a horse, and for loss of consortium to her husband, Robert, allegedly caused by defendant's negligence, the jury returned a verdict of not guilty as to both plaintiffs.* Alleging

---

* Elmer J. Reske, father of Virginia Lavery, was appointed her conservator by the Probate Court.

---

* See Callaghan's Illinois Digest, same topic and section number.

304

numerous errors in the trial proceedings, plaintiffs have appealed from the judgment entered on the verdicts and the order overruling the post trial motions.

At the time of the incident Virginia Lavery was paying $60 per month to defendant, doing business as Woodland Valley Boarding and Training Stables, for the boarding of her horse, Kingsblood. This service included caring for the "tack" * and the saddling of the horse by defendant's groom, Elmer Uthe. While riding Kingsblood in defendant's riding ring on the afternoon of October 28, 1956, Virginia fell from the horse and lost consciousness. She has sustained permanent injury to the brain rendering her totally incapacitated and affecting all her faculties.

The complaint alleged that Virginia's injury was caused by her fall, which in turn was caused by the negligence of defendant in (1) failing to saddle the horse properly; (2) failing to make a reasonable inspection of the saddling; (3) permitting the grounds to remain in an uneven and dangerous condition; (4) permitting "foreign objects, holes, and debris to accumulate on the premises; and (5) failing to make a reasonable inspection of the premises.

 The first criticism levelled at the proceedings is that the court improperly excused defendant from answering plaintiffs' discovery interrogatory No. 5, which read: "State the names and addresses of all persons who have knowledge of the relevant facts involving the occurrence narrated in plaintiffs' Complaint." Pointing out that "interrogatories may relate to any matters which might be inquired into by deposition," [Sup Ct R 19–11(4), Ill Rev Stats, c 110, § 101.19–11(4) (1961)] and that the scope of depositions includes "the identity and location of persons having knowledge of relevant facts," [Sup Ct R 19–4

---

* Tack is the term for the saddle, bridle and equipment on the horse, including stirrups, leg irons and various bridles.

(1); Ill Rev Stats c 110, § 101.19–4(1) (1961)] plaintiffs insist that interrogatory No. 5 was properly framed in the language of the rules. As well might it be argued on the basis of other language in the same rule that an interrogatory would be proper if worded as follows: "State any matter, not privileged, relating to the merits of the matter in litigation." The language of the rule should not be so employed verbatim, but rather should be considered as delineating the area within which interrogatories can be framed. The words "relevant facts" in rule 19–4(1) are not intended as a vehicle for drawing a conclusion from the answerer of the interrogatory. Since "the answers may be used in evidence to the same extent as the deposition of an adverse party" [Sup Ct R 19–11(4), Ill Rev Stats c 110, § 101.19–11(4) (1961)] it would be improper to permit an interrogatory to demand a conclusion. Plaintiffs' interrogatory No. 5 clearly called for a conclusion on the part of defendant as to what facts were relevant to the incident, and the trial court thus correctly refused to require an answer to it. Plaintiffs argue that the name of Walter Heim, a defense witness, which did not appear in defendant's answer to plaintiffs' interrogatory No. 6, necessarily would have appeared in an answer to interrogatory No. 5. We will defer further comments on this point until we consider the following contention.

▆ Plaintiffs next urge that the ruling of the trial judge in permitting Walter Heim to testify over plaintiffs' objection was an abuse of discretion in view of the fact that Heim was not listed as an "occurrence witness" in the answer to plaintiffs' interrogatory No. 6. Walter Heim was a fourteen year old high school student at the time of the occurrence. He testified that he boarded his horse with defendant and was at the stables on the day of the occurrence. He knew Virginia and had seen her saddle the horse on previous

occasions. After he heard shouting he went to the scene where he saw Virginia, her husband and her brother-in-law. When Dr. Field came to the scene Walter gave artificial respiration to Virginia in accordance with the doctor's instructions. Walter said that before he arrived at the scene he saw Kingsblood running past the barn and his saddle was in its proper position. He looked at the saddle after it was removed and there was a tear on the left flap.*

■ We find that it was not error to permit Heim to testify. While Supreme Court Rule 19–12(3), Ill Rev Stats c 110, § 101.19–12(3) (1961) provides sanctions for failure to comply with deposition and discovery orders, it is within the discretion of the trial judge to determine from the circumstances of each case what constitutes compliance or non-compliance, and to determine which of the sanctions, if any, is to be imposed. We do not feel that the trial court abused its discretion in determining that Heim should be allowed to testify despite the fact that he was not listed as a witness "to the occurrence in question or any part thereof." It was highly debatable whether he could be said to have witnessed the occurrence. The issues for the jury were whether the defendant negligently saddled the horse and negligently failed to make a reasonable inspection to see if the horse was properly saddled. Heim witnessed neither the saddling nor the fall. But even if it could be said unequivocally that Heim witnessed a part of the occurrence, the ruling below would not be reversible error since Heim's testimony was merely cumulative and plaintiffs failed to show bad faith or intentional concealment on the part of defendant. (Granger v. Turley, 20 Ill App2d 488, 156 NE2d 610.) And finally, it appears that plaintiffs could not have been prejudiced or surprised by the

---

* A flap is a piece of leather that is attached to the main body of the saddle underneath the stirrup flaps.

307

calling of Heim as a witness. Plaintiffs' witness Dr. Field stated that he had Heim assist him in giving first aid to Virginia. And Virginia's husband, Robert, and his brother placed Heim at the scene after the occurrence. Thus Heim was known and available for subpoena by both parties. If plaintiffs were not satisfied with the answer to interrogatory No. 6 or the striking of interrogatory No. 5 they could have submitted specific interrogatories as to post-accident matters as did the plaintiffs in Krupp v. C. T. A., 8 Ill2d 37, 132 NE2d 532, and Hruby v. C. T. A., 11 Ill2d 255, 142 NE2d 81.

■ The next error complained of is the striking, at the close of plaintiffs' case, of sub-paragraphs (c), (d) and (e) of paragraph five of plaintiffs' complaint. The effect of the court's ruling was to eliminate from the issues the questions of whether Virginia's fall was proximately caused by the defendant's negligence in maintaining the premises, in failing to make reasonable inspection of the premises, and in permitting foreign objects to accumulate in the riding ring. A determination of this point necessitates our reviewing the pertinent evidence in some detail.

Robert Lavery, co-plaintiff, and his half brother, Philip Gagnon, drove Virginia to the defendant's premises on the day in question. Philip testified that he saw Elmer Uthe saddle Kingsblood. Elmer denied this fact and stated that Virginia saddled her own horse on the day in question as she did on most occasions even though she was entitled to have him saddle the horse. Philip testified that they parked their car about 10 feet from the fence surrounding the riding ring. It was not a solid fence and through the spaces between the parallel boards he saw Virginia riding around the ring at a very slow gate "going clockwise." She frequently passed near their car. He said that after Virginia had ridden for about 15 minutes the horse slipped or tripped and the saddle

slipped. Virginia made no outcry and was thrown on the grass near the fence. He and his brother went to Virginia's aid, and soon Dr. Field and a boy came over. Philip testified on cross-examination that he didn't see any stones, newspapers, branches, tin cans or anything of that nature on the riding ring.

Robert Lavery testified that he was talking to his brother in the car and didn't witness the accident. He saw many hoof marks in the track in the immediate vicinity of his injured wife, the deepest of which was three and one-half inches. Dr. Robert E. Field, whose practice is specialty surgery, testified that he and his wife were riding on defendant's premises about 300 yards from the ring and he went to the scene when he heard shouting. Robert Lavery and his brother were there and later Heim and Elmer Uthe came. He didn't recall any foreign objects or debris on the ring that day, nor did he recall any holes in the surface of the riding ring in the proximity of the injured woman.

The trial judge concluded that there was no question of fact to submit to the jury on the charge that the fall was proximately caused by an improper ring condition. Following the usual test, if there was any evidence, taken in its light most favorable to plaintiffs, fairly tending to prove plaintiffs' charge that the condition of the riding ring and the failure to make a reasonable inspection of the premises proximately caused Virginia to fall, the motion to strike the portions of the complaint pertinent to this charge should have been denied. We conclude from the evidence that the trial judge correctly held that there was nothing in the evidence from which the jury could make such a finding.

■ Plaintiffs further assign as error the giving of defendant's instructions 11, 13 and 14. In defendant's instruction 11, the trial court instructed the jury, "if you find from the evidence, and under the instructions of the Court that Virginia Lavery was injured as a

result of an accident which occurred without the fault of the defendant, then the plaintiffs cannot recover damages from the defendant." Plaintiffs point out that this instruction was condemned in Kooyumjian v. Stevens, 10 Ill App2d 378, 135 NE2d 146. We note, however, that the court in that case at page 393 based its ruling upon the fact that "there was nothing indicating that the occurrence was the result of an accident not coupled with negligence." In the case before us there is evidence in the record that the fall might have been accidental and not caused or contributed to by defendant, and under such circumstances we think this instruction was proper on defendant's theory of defense. Sims v. Chicago Transit Authority, 7 Ill App 2d 21, 129 NE2d 23.

■■ Defendant's instruction 13 informed the jury that plaintiffs' claim is that Virginia sustained injuries as a result of a fall caused by the negligent saddling and inspection of the horse; that defendant claims that Virginia saddled the horse herself and denies that Elmer Uthe negligently saddled the horse or was under any duty to saddle or inspect the horse on the day of the occurrence; and that defendant denies that Virginia was injured as the result of any negligence of defendant. Instruction 13 then told the jury that these were the issues which they were to determine from the evidence and under the instructions of the court in deciding whether or not defendant is liable to the plaintiffs for damages. Plaintiffs principally complain that this instruction includes the legal question of whether or not the defendant was under any duty to saddle or inspect, which was for the court, not the jury, to decide. This instruction was an attempt by the court to define the issues, as it is obliged to do. (Goertz v. Chicago & N. W. Ry. Co., 19 Ill App2d 261, 153 NE2d 486.) Plaintiffs' instruction 13, given for the same purpose, told the jury that if they found

310

from the greater weight of the evidence that defendant negligently saddled or negligently failed to inspect the saddling of the horse and that Virginia was in the exercise of ordinary care for her own safety, and if the negligence of the defendant proximately caused the injuries, then they may find for the plaintiffs and against defendant. We think that these two instructions taken together, considered with all the instructions given, amply told the jury the issues to be determined by them under the evidence.

Defendant's instruction 14 told the jury that if they believed that Uthe did not saddle the horse then they should find the defendant not guilty. Although they concede in their reply brief that "it is true that the lawsuit revolved around the question of who saddled the horse," plaintiffs argue that the instruction is improper because it singles out one fact and does not contain all the elements necessary to sustain the verdict. They emphasize particularly that it omitted the element of failure to inspect. However, it does include the dominant issue. Plaintiffs' instruction 13, which was also peremptory, gave the converse of this instruction and included the element to inspect. The instructions taken as a series correctly advised the jury as to the law applicable to the case. Minnis v. Friend, 360 Ill 328, 196 NE 191.

We think that the trial judge was justified in refusing to give plaintiffs' impeachment instruction number 3, because there is no showing in the evidence to warrant such an instruction. We find further that the refusal by the court to permit plaintiffs to read to the jury defendant's answer to an interrogatory which disclosed that 8 photographs of the defendant's riding ring were taken by a commercial photographer on February 22, 1957, was proper, since this evidence was immaterial and irrelevant. Plaintiffs cite Goldberg v. Capitol Freight Lines, 382 Ill 283, 47 NE2d 67, claim-

ing a similar situation involving photographs that were not produced. The question of reading to a jury an answer to an interrogatory was not involved in the Goldberg case. There defendant introduced 2 pictures taken by a commercial photographer and the Supreme Court ruled that plaintiff was properly justified in inquiring about four other photographs taken by the same photographer and not introduced. In the instant case none of the photographs referred to in the answer were introduced in evidence. They were taken about four months after the occurrence, and no evidence was offered to show a foundation for the pictures to be introduced. It would have been error for the trial judge to permit the jury to hear the offered evidence.

 Plaintiffs next contend that the verdicts were the result of passion and prejudice, caused by improper questioning and coaching of David Field. David, the eleven year old son of plaintiffs' witness, Dr. Robert Field, testified that he knew Virginia and Kingsblood and went to the stables with his parents on the date of the occurrence. He said he saw Virginia put the saddle on the horse by herself and he stood by as she completed saddling the horse and he didn't remember anyone being with her. He testified that she then took the horse outside. While he was testifying on cross examination the trial judge called both counsel to the bench and commented that the boy's mother, who was seated on the front spectator's bench, was nodding to her son and must discontinue such nodding. Plaintiffs argue that the mother was coaching the witness and that counsel asked leading and suggestive questions to the prejudice of plaintiffs. Upon an examination of the record we find that the behavior of defense counsel and of David's mother could not have affected the verdicts of the jury.

 Finally, plaintiffs claim improper closing argument of defense counsel and an improper comment made by the trial judge during the questioning

of an expert witness. We see no reason to discuss these contentions in detail. The remarks by defense counsel were improper, but they do not justify a reversal. "The object of review by this court is not to determine whether the record is completely free of error but to ascertain whether upon the trial there has been such error as might prejudice the rights of a party." (Harlan E. Moore & Co. v. Champaign Nat. Bank, 13 Ill App2d 232, 246, 141 NE2d 97.) We do not consider the remark of the trial judge to have been improper. "A considerable latitude must be allowed the trial judge in conducting a trial, and it is only where his conduct or remarks are such as would ordinarily create prejudice in the minds of the jury that they constitute ground for reversal." (Anderson v. Inter-State Acc. Ass'n, 354 Ill 538, 550, 188 NE 844.) We have had occasion to examine the entire record and we find no reversible error in this case.

Judgment affirmed.

MURPHY, P. J. and ENGLISH, J., concur.