Walter L. Nelson, Plaintiff-Counterdefendant, Appellee, v. Gerald Pals, Defendant-Counterplaintiff, Appellant.

Gen. No. 49,381.

First District, First Division.

July 27, 1964.

Lawlor, Walsh & Sullivan, of Chicago (Dudley R. Sullivan and John J. O'Connor, of counsel), for appellant.

Piacenti & Cifelli, of Chicago Heights (John J. Nelligan, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

This is a negligence action resulting from a collision between automobiles driven by the parties in the case. Defendant counterclaimed for damages allegedly sustained by him. The jury returned a verdict for the plaintiff on the complaint and the counterclaim. Defendant brings this appeal. There are no questions raised on the pleadings.

It is defendant's contention that the trial court erred in excluding a witness of his; that the verdict was against the manifest weight of the evidence; that plaintiff's attorney made prejudicial arguments; and that the verdict was excessive.

The locale of the collision was Cottage Grove Avenue approximately a half mile north of Joe Orr Road. At this point Cottage Grove is a straight road with no hills or curves, running through farmland and open country. It is a two lane, black macadam highway approximately 20 feet wide with a white center dividing line. At about 4:00 p. m. on July 28, 1954 the plaintiff, alone in his car, was driving south on Cottage Grove. Defendant, also alone, was driving north on Cottage Grove. The basic question is: which

driver crossed the center dividing line thereby causing the accident.

It was raining at the time but the evidence is conflicting as to the intensity of the rain and the visibility. Defendant testified it was a drizzling rain and visibility was approximately a mile and a half. Plaintiff testified it was raining "very bad" and he could see perhaps 25 or 30 feet ahead of him.

Plaintiff testified he was traveling about 30 miles per hour; that when he first saw defendant's car it was upon him in the southbound lane (his lane), about 25 or 30 feet away, part of it in the northbound lane. He could do nothing about it and the collision occurred.

Both drivers were rendered unconscious and were taken in the same ambulance to St. James Hospital in Chicago Heights.

Allen Bennett, called by plaintiff, testified that he was driving a Ford panel truck north on Cottage Grove at a speed of about 35 miles per hour; that it was raining heavily and he could see 150 to 225 feet or so, roughly, down the road; that at the time of the impact, he was 50 to 75 yards behind defendant's car; that the car driven by defendant passed him at a speed of about 40 to 50 miles an hour and then got back into the right lane ahead of him; that after "it ran for a piece" it "seemed" like the front wheel slipped off the highway; that it then did a "fishtail," meaning he was getting back on the highway; that he then saw plaintiff's automobile for the first time traveling south in the west lane; that there was a head-on collision; that at the time of the collision the front portion of defendant's car was in the west side lane; that after the impact defendant's car was in the *west lane* on the west side of the road, partially on the pavement and partially on the *west shoulder;* that plaintiff's car was in the ditch on the

271

east side of the road, its front facing in a southerly direction a few feet north of the other car.

Gus Mourgelas testified he was a Cook County deputy sheriff at the time of the accident and that he was the investigating officer. He used the accident report to refresh his recollection. He stated that it was raining when he and his partner arrived at the scene; that plaintiff's car was on the east side of Cottage Grove and defendant's car was facing north on the *east side* of Cottage Grove. His report did not indicate any evidence of skid marks; that he believed defendant's car was facing in a northerly direction with his left rear and front wheel on the highway and his right front and rear wheels on the *east* shoulder of the road; that about two thirds of the width of the car was on the *east* shoulder; that plaintiff's car was to the north thereof and his report indicated that defendant's car was completely off the highway on the *east* shoulder.

Defendant testified that he saw the other car when it was approximately a city block ahead of him; that there was nothing unusual about it until it was about 150 to 185 feet from him; that it then crossed the dividing line and came directly at him at a speed of 50 to 55 miles an hour. He (defendant) pulled over to the right shoulder and stopped. The collision occurred. About two thirds of defendant's car was on the shoulder. He stated that he had seen people working on their farms in the locality and remembered speaking to a Mr. Verduin and a Mr. Van Zuidam, his cousin, at the scene after regaining consciousness; that plaintiff and defendant occupied the same hospital room for the first night and he heard plaintiff say on three of four occasions: "what have I done to you, and how can I make this up to you?"

Defendant then called Loren Van Zuidam who stated that he was working in his yard about one mile south of the scene. Plaintiff objected to his testifying

272

because this witness' name was not in defendant's answer to an interrogatory submitted prior to trial. The interrogatory was in the following form:

"1. What are the names and addresses of all persons in the possession of the defendant, or once in his possession and subsequently furnished to his attorneys, insurance company, or insurance company representative, who have knowledge of relevant facts pertaining to the accident complained of in plaintiff's complaint."

In answer to this interrogatory, defendant listed only the name and address of the occurrence witness, Allen Bennett. Defendant's attorney informed the court that he had not prepared the answers to the interrogatories and did not become aware of the omission until the week-end prior to trial, when he commenced his preparation. The trial court stated that it regarded the interrogatory as a continuing one and the omission should have been corrected when ascertained.

Defendant argued that there could be no surprise to the plaintiff since the defendant had disclosed the name of the witness in a deposition taken of him one year prior to the submission of the interrogatory wherein defendant mentioned that his cousin, "Mr. Van Zuidam" was at the scene before he, the defendant, was taken to the hospital; that Van Zuidam's father lives about a mile and one-half from the scene; that the witness did not see the accident; that he lives in South Holland on Cottage Grove, the exact address not known, but that he had a telephone number. Counsel further argued to the trial court that the interrogatory was bad in form as held in Reske v. Klein, 33 Ill App2d 302, 179 NE2d 415 (1962) and Fedors v. O'Brien, 39 Ill App2d 407, 188 NE2d 739 (1963). Counsel also informed the court that this witness would testify on one point—as to the location

273

of the cars after the impact—which would be corroborative evidence but that on another point—the location of the debris on the east half of the highway—that would constitute the only evidence on the subject in the record.

The court sustained plaintiff's motion and excluded the witness from testifying. An offer of proof was made, which established that the witness arrived on the scene and saw plaintiff's car in the ditch and shoulder on the *east* side of the road; that two thirds of the width of defendant's car was on the shoulder and that he saw broken glass on the east half of the pavement, east of the dividing line.

The proof in the case establishes a very close question of liability. Any additional facts could materially affect the verdict, if not bring about a contrary finding. The question of the exclusion of Loren Van Zuidam as a witness, in our opinion, is crucial.

In the case of Reske v. Klein the trial court, prior to trial, sustained an objection to a similar interrogatory calling for the identity and location of persons having knowledge of relevant facts. In affirming the lower court's ruling, we held that such interrogatory demanded a conclusion of the answerer as to what facts were relevant to the incident. In the opinion, page 306, we said: ". . . it would be improper to permit an interrogatory to demand a conclusion."

In Fedors v. O'Brien, the interrogatory requested the names and addresses of all persons having knowledge of facts relevant to the occurrence. No objection was made at the time it was propounded but the answer to it omitted the names of three witnesses who, on the trial of the case, were permitted to testify. On review, we did not feel that the facts made a vital distinction from the Reske case. In affirming the action of the lower court, we said: "When specific interrogatories are asked, the opposing counsel can test, before trial, whether the matter requested is

privileged or not contemplated by Rule 19–11. See Krupp v. Chicago Transit Authority, 8 Ill2d 37, 132 NE2d 532 and Hruby v. Chicago Transit Authority, 11 Ill2d 255, 142 NE2d 81 as to the form of interrogatory to be used. As we said in Reske, interrogatories calling for a conclusion on the part of the opponent or his counsel should not be used."

■ The statutes and rules do not permit a party to unequivocally request the names and addresses of everyone who might be presented by the opposing party at the trial. It is not fair or just to subject the answerer to the penalty of the exclusion of his witness, or witnesses, if he fails to comply with an unreasonable demand or request calling for a conclusion. The burden is upon the interrogator to list the possible classification and subclassification of particular events as facts which are in any way related to the subject matter of the litigation. The interrogatories should be specific and indicate clearly the area of inquiry so that the opposition may, at the outset, determine its basis and legitimacy.

■ ■ The interrogatory in the instant case was improper and should not be used. (See Reske and Fedors.) The failure to object and the partial answer to it did not grant it validity ab initio.

■ The trial court should have allowed the witness to testify. It erred in sustaining the objection.

Inasmuch as the cause must be retried, we do not deem it necessary to pass upon the other grounds for this appeal. The cause is reversed and remanded for a new trial in accordance with the views herein expressed.

Reversed and remanded with directions.

MURPHY, P. J. and BURMAN, J., concur.