(No. 36828.—▐▐▐▐▐)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LeROY BUTLER, Plaintiff in Error.

*Opinion filed May 27, 1963.*

STEPHEN M. HERMAN, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and EDWARD J. HLADIS and FRANK T. LINDMAN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, LeRoy Butler, and a co-defendant, Charles Williams, were tried together before a judge of the criminal court of Cook County upon a charge of larceny. The defendant was found guilty and Williams not guilty. On this writ of error the defendant questions the sufficiency of the evidence to establish his guilt beyond a reasonable doubt.

The indictment charged the defendant and Williams with larceny of $250 in cash, the property of Frank Galecki.

Galecki testified that he and a companion named Vincent Szaban spent the evening of January 3 and the early morning hours of January 4, 1959, in a bar or tavern near the intersection of Madison Street and Hoyne Avenue in Chicago. They met at about 8:00 P.M. and had a number of drinks of whiskey chased with beer, "more than ten maybe," between their arrival and their departure at about 3:30 in the morning. He was unable to remember whether there was entertainment in the bar because he was "pretty drunk". After leaving the bar they walked a short distance and, according to Galecki, encountered the defendant and Williams on the street. The defendant and Williams, admitted homosexuals, were dressed in women's clothing, although Galecki testified he knew right away they were men. They "started bothering" Galecki and Szaban, and invited them to a nearby basement apartment. Galecki went into the apartment, he said, because he "was afraid." In the apartment, the defendant asked him to take his overcoat and jacket off and to put them in the bedroom on the chair, and Galecki complied. Then, he testified, "I tried walk out to the front room and one time the light was out, somebody turned the light off and I heard men's voice, 'Let's get out of here, if you don't we kill you.' So I went back, grabbed my coat and I tried walk out quick." In all, he said, he and Szaban were in the apartment for two or three minutes.

Before leaving home for the evening, Galecki had put an unspecified sum of money in his trousers pocket for spending, and $250 in the inside breast pocket of his jacket or suit coat. The money was loose, since he carried no wallet. He did not remove this money or count it during the course of the evening, and he did not mention it to the defendant or Williams. He could "feel it on top of the jacket," however, when he entered the apartment, and when he made his abrupt departure he put his hand in the pocket and discovered the $250 was gone. He did not see

the defendant touch the jacket or put his hand in the pocket.

Szaban, Galecki's companion, testified that he and Galecki each had "ten, maybe fifteen" shots of whiskey or vodka, followed by beer, while at the bar. He stated that he did not know how they happened to meet the defendant and Williams on leaving the bar since he was "maybe a little drunk" and Galecki was "a little bit drunker." Upon entering the apartment, he and Galecki sat in the front or living room with the defendant and Williams, and according to Szaban, Galecki did not leave that room or ever go into a different room. After two or three minutes, the lights went out, someone yelled something, and Szaban left.

In the haste of their exit, Szaban left his suit coat in the apartment, and Galecki left a pair of gloves. To identify the place, Szaban marked the number thirteen in the snow with his foot as he was leaving. Some time later Galecki and Szaban met at a liquor store or restaurant in the vicinity and telephoned the police. They directed the officers to the apartment, where the defendant and Williams were arrested. The defendant had $60 on his person and Williams $40. Szaban's coat and Galecki's gloves were found. Although the officers conducted a thorough search of the apartment they found no other money. The $250 remains unaccounted for in the evidence.

The arresting officers testified that Galecki and Szaban reported the occurrence by telephone at about 5:25 A.M. on January 4, 1959, and that they appeared to be sober. They also testified that in making his complaint Galecki had described the defendant and Williams as "two colored women," and that at the time of the arrest Galecki had identified the defendant as "the woman I was with."

The defendant and Williams testified in their own behalf that they had been accosted by Galecki and Szaban in quest of "a good time" and that the four had been to-

gether in the apartment for a substantial period of time, from a half hour to an hour. During this interval, they testified, Galecki disrobed completely and got into bed with the defendant in the bedroom, paying the defendant $20 from his trousers pocket. Williams during this time was in the rear of the apartment. Szaban was in the living room, according to their testimony, where Galecki had left his jacket asking Szaban to watch it. Galecki and Szaban had left abruptly when they were startled by some noise in the alley.

The evidence as a whole is conflicting and inconclusive. Galecki and Szaban were not fluent and their answers were not always responsive or even intelligible. Their perceptions and memories were beclouded by alcohol. On such critical questions as whether Galecki left the living room at all and where his jacket was placed, their testimony does not jibe. Their version of the events leaves unexplained a period of nearly two hours between their departure from the apartment and their telephone call to the police.

The record supplies no direct evidence of larceny by the defendant. None of the witnesses testified that the defendant was at any time alone with Galecki's jacket. The only person who knew of the money in the jacket was Galecki himself. No other witness saw it before or after the escapade. Galecki himself could say no more than that he had had the money and that it was gone when he left the apartment. The defendant, Williams, and the apartment were thoroughly searched a short time later, but the $250 was not found. The defendant's own testimony discloses a sordid course of conduct. The evidence must be measured, however, against the crime of larceny with which he was charged. Due deference to the trial judge's appraisal of the witnesses' credibility does not excuse this court from its duty to examine the evidence to determine whether guilt has been established beyond a reasonable doubt. (*People* v. *Dawson*, 22 Ill.2d 260, 264;

*People* v. *De Stefano,* 23 Ill.2d 427, 431-32.) Here the direct evidence was confused and conflicting on several vital questions of fact. The testimony credited to its full limits would establish only that the defendant was present in the apartment with three other persons, and that he had an opportunity equal with that of others to commit larceny. Under the circumstances proved, we can not say that no reasonable doubt of the defendant's guilt remains or that every reasonable hypothesis inconsistent with innocence is excluded. On such a record, the conviction can not stand. *People* v. *De Stefano,* 23 Ill.2d 427; *People* v. *Jefferson,* 24 Ill.2d 398.

The judgment of the criminal court of Cook County is reversed.

*Judgment reversed.*