THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANTHONY CORTEZ, Defendant-Appellant.

(No. 60004;

First District (2nd Division)—February 25, 1975.

James J. Doherty, Public Defender, of Chicago (Frederick F. Cohn and Ira Churgin, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Scott W. Petersen, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE HAYES delivered the opinion of the court:

The defendant, Anthony Cortez, was convicted following a bench trial held on October 26, 1973, of the theft, on October 13, 1973, of a man's leather jacket, the property of Sears Roebuck and Company, in violation of section 16—1(a)(1) of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 16—1(a)(1)), and admitted to 2 years' probation. The only issue on appeal is whether the State's evidence proves the defendant was guilty of theft beyond a reasonable doubt.

Walter Biddle, a security agent for Sears Roebuck and Company at their employees' store at 5555 South Archer Avenue in Chicago, testified that, at about 3:30 in the afternoon, he observed the defendant enter the store wearing a short jacket he described as "the wet look." For about 20 or 25 minutes, he observed the defendant. The defendant was trying on "these big survival jackets"; he "kept looking at himself in the mirror and the defendant kept walking around." The defendant "kept walking around" and was passing the checkout cashiers "on his way out" when he stopped the defendant. The defendant was wearing a heavy brown jacket with a fleece lining and was still inside the store about 3 feet from the door. It was "kind of shirt-sleeve weather" and he did not see any

other people in the store with heavy jackets on such as the one the defendant was wearing. The price tag was hanging off the sleeve. The exit near where he stopped the defendant was the only exit from the store. He took the defendant to the office and called the city police. A short time later a person named "Mickey" came looking for the defendant and was raising "a little hassle" because the sergeant had given the defendant a statement to sign and Mickey said they were violating the defendant's constitutional rights. Under cross-examination by defendant's counsel, Biddle said he didn't remember if Mickey told him he had been shopping with the defendant and, when asked if Mickey had said he had the money to pay for the coat, he answered that Mickey had told him that outside the 8th District station. Asked if defendant had not, when stopped, said he was looking for Mickey, he answered: "No. He started telling me—he said, leave me out of here. There is a child involved or something involved and they [sic] said, they will find him if he is here." Defendant's counsel then asked, "Then, the defendant didn't tell you he was looking for Mickey at the time to ask him for the money to pay for the coat?" and Biddle answered: "I wouldn't know who he was looking for because I didn't know who he was looking for, as the name is Mickey until I came out of the 8th District Station."

The defendant testified he went shopping with his friend, Mickey Santiago, but they separated, "like fifteen feet after we walked in." Mickey went to buy some work clothes. He "just wanted to look around the store to see what they had," and explained: "I walked to the coats and browsed around. I seen the coat I like there and it was for—on sale for $18 or $19 and it was a $40 coat and I didn't have money on me to pay for it and I was walking around the store to look—looking for my friend and he had the money on him and I ask him if he would lend it to me." He was about 20 feet from the door when Biddle stopped him. He was wearing the coat, and there were tags on it identifying Sears Roebuck. Biddle took him into the security office and he was asking what he was being arrested for when he was still in the store and nobody would answer him and so he "got pretty mad about it" and "started kicking things around." Mickey showed up about 15 or 20 minutes later. He explained: "They had given me a statement and it says to sign it and I say, what would happen if I sign it; would you let me go for that. And they still wouldn't talk to me and Mickey come in and says, 'What are you doing?' And I said, 'This guy wants me to sign a statement', and he says, 'You don't have to sign nothin' like that' and I didn't intend on doing and they threw him out." Under cross-examination by the State, when asked if he had any money, he said he did not have enough for the

coat. He had known Santiago about 15 years. When questioned further if Santiago was "in the habit of paying" the defendant's bills, he answered, "If I am short, I guess he would."

Mickey Santiago testified that he was with the defendant at the Sears store; he went there looking for work clothes, primarily a Levi jacket. He became separated from the defendant since the defendant "wasn't interested" in looking for work clothes and went, instead, to look for a different jacket. When asked when he next saw the defendant, he explained: "In the office there. I went outside. I looked through the store for him and couldn't find him and I stepped outside and couldn't find him. As I stepped back into the store, the security agent (who was in uniform) was following me, right behind me and I figured that they must—something must have happened and I went into the office and seen Tony inside the office there." He didn't remember all of the conversation with Biddle but he did remember telling the defendant not to sign anything and that "they just shoved" him "outside of the office."

In making a finding of guilty, the court stated: "I don't believe the testimony regarding the—his friend, Mickey; that his friend, Mickey, was in the store—anywhere in the store."

The defendant contends he was not proven guilty beyond a reasonable doubt, because he neither left the store without paying nor concealed the merchandise. The State, he contends, failed to prove either that he exerted unauthorized control or that he intended to permanently deprive Sears of the property in question.

■■ As to unauthorized control, the State's evidence showed that the defendant had already passed the cashiers and was only 2 or 3 feet from the exit, apparently on his way out, when stopped by the security agent. There is no legal requirement for a theft conviction that the merchandise actually be taken from the store premises since the defendant here had the store merchandise in his possession and had passed the checkout counter; he thus passed up the usual opportunity to pay for the merchandise; this was sufficient to show unauthorized control.

Whether, under the circumstances, this conduct established criminal intent is a different problem. Absent an admission by a defendant, intent must ordinarily be shown by circumstantial evidence. In cases involving an alleged shoplifter arrested inside a store, the usual circumstance supporting the inference of a criminal intent is concealment or attempted concealment, as defendant points out. In the case at bar, however, there is *no* evidence of any attempt by the defendant to conceal the coat. The tags were still on it, hanging off the sleeve in plain view. The heavy coat was itself conspicuous; it was unusual dress, given the warm weather, and Biddle testified that nobody else in the store was wearing a heavy

winter jacket or he would surely have noticed. There are circumstances under which wearing an object out in the open, for example, a piece of jewelry, would be a clever method of concealment, but such is not the case here.

■■■ Where the evidence is circumstantial, proof beyond a reasonable doubt requires the exclusion of every reasonable hypothesis based on the evidence which is consistent with innocence, and the Illinois Supreme Court has stated: "Due deference to the trial judge's appraisal of the witnesses' credibility does not excuse this court from its duty to examine the evidence to determine whether guilt has been established beyond a reasonable doubt." *People v. Butler* (1963), 28 Ill.2d 88, 91, 190 N.E.2d 800.

Criminal intent must almost always be proved by circumstantial evidence. The relevant circumstances in the instant case, drawn from the testimony of the State's only witness, were that defendant, wearing the jacket, walked around the store for 20 to 25 minutes; he then walked past the checkers without paying for the jacket; he also walked toward the exit door and was within 3 feet of the door when he was stopped inside the store by the witness; and at the time he admittedly did not have enough money to pay for the jacket.

On the other hand, State's witness himself supplied additional circumstances which are inconsistent with the required criminal intent: It was "shirt sleeve" weather and no one else in the store had on a heavy jacket; the store's price tag was hanging from the sleeve of the jacket in plain view; defendant had been walking around the store wearing the heavy jacket with the visible price tag dangling from the sleeve for 20 to 25 minutes, thereby making himself most conspicuous.

In his testimony, defendant not only denied any criminal intent but supplied an explanation which innocently accounted for all the circumstances testified to by the State's witness. Defendant's explanation was then substantially corroborated by the other defense witness.

The State offered no additional circumstances to contradict defendant's innocent explanation of all the circumstances which the State had introduced into evidence. Nor did the State offer any alternative explanation which was incriminating.

So far as the evidence shows, defendant exhibited none of the characteristics which one would expect a guilty person to exhibit. He did not attempt to escape or to conceal the merchandise, and he immediately attempted to explain the situation to Biddle. While Biddle attempted to hedge his testimony as to whether defendant, when stopped, said he was looking for Mickey Santiago to get the money to pay for the coat, Biddle's testimony nevertheless was that the defendant had immediately

said that he was looking for someone. Although Biddle did not know Mickey as Mickey Santiago until later, he apparently understood that the man who came to the office in the store a few minutes later was the friend of whom the defendant had spoken.

■■ To summarize: The defendant's innocent explanation accounted for all the circumstances in evidence, including the potentially incriminating circumstances; the explanation was uncontradicted by evidence of circumstances for which it failed to account; the explanation was substantially corroborated; far from being inherently improbable, the explanation was highly persuasive; and defendant's credibility was not otherwise impeached.

■■ Under such circumstances, defendant's explanation constituted a reasonable hypothesis of innocence which cannot be eliminated simply by the trial court's conclusion that the defendant was incredible.

It is no answer to say, as the State does in its brief, that the trial judge determines the credibility of the witnesses and that he "rejected the defendant's claim of innocence," or that the court said it did not believe Santiago was ever in the store. Evidence given in court under oath may not be simply disregarded where it is neither contradicted nor impeached nor inherently improbable. *People v. Jordan* (1954), 4 Ill.2d 155, 163, 122 N.E.2d 209.

Since the evidence did not establish the defendant's guilt beyond a reasonable doubt, the judgment of the circuit court of Cook County is reversed.

Reversed.

DOWNING, P. J., and LEIGHTON, J., concur.