THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BENJAMIN ROBINSON, Defendant-Appellant.

(No. 57826;

First District (2nd Division)—October 7, 1975.

Jeffrey Haas, Gabrielle P. Pieper, and Andrea Monsees, all of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Thomas A. Mauet, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE HAYES delivered the opinion of the court:

On 9 November 1971, in a bench trial, defendant-appellant, Benjamin Robinson (hereinafter defendant), was convicted of a violation of section 3(b) of "An Act relating to * * * firearms * * *" (Ill. Rev. Stat. 1971, ch. 38, par. 83—3(b)), which subparagraph is as follows:

"(b) Any person within this State who transfers or causes to be transferred any firearm shall keep a record of such transfer for a period of ten years from the date of transfer. Such record shall contain the date of the transfer; the description, serial number or other information identifying the firearm if no serial number is available; and, if the transfer was completed within this State, the transferee's Firearm Owner's Identification Card number. On demand of a peace officer, such transferor shall produce for inspection such record of transfer." [1]

---

[1] Though defendant was not charged with a violation of a companion subparagraph (Ill. Rev. Stat. 1971, ch. 38, par. 83—3(a)), we think it will contribute to the understanding of this case to set out the said companion subparagraph:

Section 14 of the Act provides that any person who violates any of the provisions of the Act shall be fined not to exceed $1,000 or imprisoned in a penal institution other than the penitentiary not to exceed one year, or both. Pursuant to the said penalty paragraph, defendant was sentenced to imprisonment in the Cook County Jail for a period of nine months. On 29 November 1971, the trial court allowed defendant's motion for post-conviction bail; bond was set in the amount of $3,000; defendant posted the required bond and was released from custody.

On 8 December 1971, defendant filed motions in arrest of judgment and for a new trial, and later filed a motion for reduction of sentence. On 8 May 1972, all of defendant's motions were denied. On 5 June 1972, defendant filed his notice of appeal from the judgment of conviction and the sentence. Defendant has remained at large under his post-conviction bond.

At defendant's bench trial, the State's first witness was one Peter Zelkovich, an investigator for the Office of the State's Attorney of Cook County and the complainant in the case. His testimony, supplemented by the common law record, supplies the following background for the complaint:

On 12 November 1970, officers of the Police Department of Carbondale, Illinois, had executed a search warrant for guns on improved premises at 401 North Washington Street in Carbondale. The warrant had issued because four officers of the Carbondale Police Department had been shot, and suspects in those shootings had been observed entering the said premises. Ten guns had been seized upstairs at the said premises. The guns had been inventoried with their serial numbers. One of those guns (a .12-gauge riot-type pump-action shotgun) was found to have been purchased by defendant in Chicago on or about 25 July 1970 from Harper's Ferry Ordnance, 180 North Wacker Drive, Chicago, Illinois.

When the witness had received the above information from the Carbondale Police, he found by checking with the Chicago City Collector's Office that defendant had duly registered the gun with the City of Chicago pursuant to the provisions of a Chicago ordinance. He also found that the City had no record (as also required by the ordinance) of any subsequent transfer (change of disposition) of the gun, and that the Chicago Police Department had no record of any report that the gun had been lost or stolen. The witness had then attempted to locate defendant at the

"(a) No person within this State may knowingly transfer, or cause to be transferred, any firearm or any firearm ammunition to any person within this State unless the transferee with whom he deals displays a currently valid Firearm Owner's Identification Card which has previously been issued in his name by the Department of Law Enforcement under the provisions of this Act."

residence address given on the City registration form (8020 South Lafayette Street in Chicago), but had been told that defendant no longer lived at that address; nor had the witness been able to locate defendant anywhere else.

The witness had then gone to Carbondale, where he had interviewed Carbondale Police Detective Howard Hantz, who then had custody of the gun. The witness had personally inspected the gun and had checked its serial number. The witness had then asked Detective Hantz to photograph the portion of the gun bearing the serial number, which Hantz had done. The photograph, accompanied by a supporting affidavit of Detective Hantz, was then produced and marked for identification as the State's Exhibit No. 1. Since the witness had himself personally inspected the gun and checked its serial number, he was able to, and did, testify as to the accuracy of the photograph.

The witness had finally learned that defendant was scheduled to appear in court at 1121 South State Street in Chicago. The witness thereupon procured a warrant for defendant's arrest on a complaint that defendant had violated a Chicago Ordinance in failing to notify the City of a change of disposition of his registered weapon. (Chapter 11, section 1—13 of the Municipal Code of the City of Chicago.) The witness had then served the warrant and arrested defendant on 19 August 1971 in the lobby of the building at 1121 South State Street. As soon as the witness had arrested defendant, he began to question defendant. But the two were joined very shortly by defendant's attorney, who had accompanied him to the building; the questions which the witness had been able to ask defendant before the attorney joined them had related solely to the personal history of defendant. After the attorney had joined them, the witness had said that he had no further questions. Defendant was released from custody on preconviction bail.

The common law record shows that the witness signed a complaint charging defendant with the State offense of violating section 3(b) of "An Act relating to  *  *  *  firearms  *  *  *" (Ill. Rev. Stat. 1971, ch. 38, par. 83—3(b)), in that defendant, on 12 November 1970 at 8020 South Lafayette Street in Chicago, had transferred a described riot pump shotgun to another person and had failed to keep a record of the said transfer; that the witness had moved for leave to file the said complaint; that on 24 August 1971, a preliminary hearing was had on probable cause to file the complaint; that, after a finding of probable cause, the matter was continued to 29 September 1971; that, on that date, the complaint was filed and the cause was continued to 9 November 1971 on motion of the State; that, on 9 November 1971, defendant was arraigned on the State charge, to which he pled not guilty; that, after defendant had

waived a jury trial, his bench trial followed immediately, after which defendant was found guilty and judgment of conviction was entered.[2]

As already noted, Investigator Zelkovich was the first witness for the State at defendant's bench trial. The principle portion of his testimony has already been summarized. His testimony was interrupted in order to allow the State to call its other two witnesses, who were Carbondale police detectives.

Carbondale Detective Larry Hill authenticated a copy of the inventory which he had made of the ten guns, with their serial numbers, which had been seized upstairs at 401 North Washington Street in Carbondale on 12 November 1970. He had been present when the search warrant had been served and the guns had been seized. The copy was thereupon stipulated into evidence as People's Exhibit No. 2. Hill then testified that the ten guns had all finally been returned to the possession of all the persons who had been on the premises when the guns had been seized, so that defendant's shotgun was no longer in the custody of the Carbondale Police. Later in his testimony, he supplied the names of one Leonard Thomas and one Melvin Boyd as the persons to whom the guns had been returned.

Carbondale Detective Paul Staffy testified that he had been present at the seizure of the guns and had observed Detective Hill make the inventory of the guns with their serial numbers. He identified People's Exhibit No. 1 for identification as a photograph depicting that portion of defendant's shotgun which bore its serial number.

The State then recalled Investigator Zelkovich, who, based upon his personal inspection of defendant's shotgun and its serial number on his visit to Carbondale, testified to the accuracy of the photograph. The State thereupon offered the photograph in evidence, since it could not produce the shotgun itself owing to the fact that, as Detective Hill had testified, the shotgun had been returned to the possession of the persons from whose possession it had initially been taken. The court eventually admitted the photograph into evidence as the best evidence available and because the serial number of the gun appeared in the photograph and there was testimony as to the accuracy of the photograph.

Investigator Zelkovich then testified that defendant had never produced any record of the transfer of the shotgun nor any City Transfer of Record. Prior to arresting defendant on 19 August 1971, Zelkovich had himself

---

[2] Defendant's bench trial involved both the State charge and the City charge. Defendant was also found guilty of the City charge and a judgment of conviction was entered and defendant was fined $300. On a post-trial motion, however, the judgment and sentence on the City charge were vacated. The City charge is not before us on this appeal.

checked for a City Transfer of Record, but had found none, and had also checked with the Chicago Police Department for any report that the gun had been lost or stolen but had found no such report. Zelkovich then identified the State's Exhibit No. 3 for identification as a copy of the City Firearm Registration form which had been executed by defendant and filed under date of 25 July 1970. The exhibit was then admitted into evidence.

On cross-examination, Zelkovich conceded that, when he had arrested defendant, the only questions which he had asked defendant prior to the appearance of defendant's attorney had related solely to defendant's personal history, and that, after the appearance of the attorney, he [Zelkovich] had said that he had no further questions. Zelkovich then conceded that he had found that, on 28 August 1971, the shotgun had been reported by defendant as lost or missing and the report stated that defendant had first noticed the loss on 20 August 1971.

At the conclusion of Zelkovich's cross-examination, the State rested its case-in-chief. Defendant thereupon moved for a directed finding of not guilty. The principal basis for the motion was that Investigator Zelkovich had conceded that he had never demanded of defendant that defendant produce a record of transfer for inspection, nor was there any testimony for the State that any peace officer had ever made such a demand of defendant. It was also contended, almost incidentally, that Investigator Zelkovich had never even asked defendant whether he had any such record. The motion was denied.

Testifying in his own defense, defendant gave as his residence address the same Lafayette Street address in Chicago (8020 South Lafayette Street) which he had used on his City Registration form. He explained that his brother owned the six-room one-story bungalow with basement and attic located at that address, and that the brother lived there with his wife and four children. Defendant also lived there from time to time. During the day time, the doors to the home are unlocked so as to permit the children to have access to the house. The door leading from the residential floor to the attic is not kept locked. Defendant had purchased the shotgun involved in this case, had registered it both with the State of Illinois and with the City of Chicago, and had kept it in the attic at the Lafayette Street address under some sort of covering. On the day after his arrest (that is, on 20 August 1971), defendant had first noticed that the shotgun was no longer in the attic. He did not transfer it or cause it to be transferred to any other person in any manner, and he does not know how it disappeared from his possession. When he was arrested and before his attorney joined Investigator Zelkovich and himself, Zelkovich had merely asked him what his name was and had showed him

some papers. After his attorney joined them, she advised defendant to answer any questions which Zelkovich might ask. Despite having heard this advice, Zelkovich said that he had no further questions to ask. Specifically, Zelkovich had not then asked defendant any questions about a transfer of the shotgun, and he had never asked defendant whether defendant had a record of any transfer of the shotgun.

On cross-examination, defendant testified that he had five other guns, all duly registered and all kept in the same place in the attic. None of these five guns is missing. On 28 August 1971, defendant had reported the shotgun as missing to the Chicago Police Department. He had first found it to be missing on 20 August 1971, the day after he had been arrested and had been told that the shotgun had been in Carbondale. He had told the desk sergeant to whom he had made his report that he had last seen the shotgun in the attic in May of 1971, but he could not have seen it in the attic at that time because it was then in Carbondale. He did not in fact have any record of a transfer of the shotgun.

Upon completion of defendant's cross-examination, the defense rested. After closing argument, the trial judge found defendant guilty on both the State and the City charge; the judge commented that the issue was one of credibility and the judge did not believe defendant's story. At the following hearing in aggravation and mitigation, the State showed that defendant had a record of one conviction of a misdemeanor in 1962. The State then pointed out that the shotgun was a military and police type of weapon which had no sporting use, and that two of the other five guns, which two defendant had also purchased in July of 1970, were of the same type. In mitigation, defendant pointed out that he had only the one prior conviction nine years ago and that conviction was for the misdemeanor of "attempt to commit a crime." Defendant works to earn his living and contributes to the support of two small children who do not live with him. At the conclusion of the hearing, the trial judge commented that he thought defendant was trafficking in peoples' lives and then sentenced defendant to nine months in the Cook County Jail on the State charge, which is the only matter before us on review.

Defendant timely filed a post-trial motion in arrest of judgment and for a new trial, and another post-trial motion for a reduction of sentence. As grounds for the first motion, defendant urged two principal contentions: (1) the State failed to prove beyond a reasonable doubt two essential elements of the offense charged, to-wit: a) that, despite defendant's testimony of ample opportunity and of cooperativeness on his part, any peace officer had ever demanded of defendant that he produce the required record of transfer of the shotgun, or indeed had ever ques-

tioned defendant as to whether defendant had in fact kept the required record; b) that defendant had made a knowing transfer of the said shotgun. (2) The complaint was legally insufficient for failure to allege certain essential elements of the statutory offense, to-wit: a) that defendant was a person "within this State"; b) that a peace officer had demanded of defendant that he produce the required record for inspection; c) the identity of the alleged transferee; d) the statutorily required contents of the required record.

The State's response to these contentions was somewhat sketchy. As to the legal sufficiency of the complaint, the State merely observed that defendant had made no objections to its legal sufficiency either prior to or at trial, so that the objections came too late and must be deemed to have been waived. The absence of any demand for production of the record was conceded, but the State pointed out that the testimony established that defendant in fact had never produced any record. Further, in response to a direct question on cross-examination, defendant had conceded that he did not have or keep any such record. Possibly in response to the contention that the complaint was legally insufficient for failure to identify the transferee of the alleged voluntary transfer, the State noted that there was no allegation in the complaint that defendant knew who was in possession of the shotgun.

In elaborating on the contention that the State's evidence was insufficient to prove beyond a reasonable doubt that defendant had made a knowing transfer of the shotgun, defendant pointed out that there was no evidence whatever linking him to any person in Carbondale and specifically to one Leonard Thomas or one Melvin Boyd whom Carbondale Detective Hill had identified as the persons from whose possession the Carbondale police had seized the shotgun and to whose possession it had later been returned. The State's case was purely circumstantial: defendant was in possession of the shotgun as its owner in July of 1970; the Carbondale police had seized the shotgun from the possession of persons in Carbondale in November of 1970; these two facts warrant the inference that therefore defendant must have made a knowing transfer of the shotgun to one or some or all of those persons in the intervening months. But the inference, if warranted at all, is most tenuous in the total absence of any testimony linking defendant to any person in Carbondale either during the said interim or at any time. In addition, since the State's case is purely circumstantial, every reasonable hypothesis consistent with defendant's innocence must be ruled out; but defendant's testimony constitutes such a reasonable hypothesis, which the State's evidence does not rule out and cannot be ruled out

solely by the trial judge's refusal to believe defendant's account when that account is both internally consistent and is consistent with the facts established by the State's evidence.

At the conclusion of the hearing on the said post-trial motion, the trial judge found that the complaint was legally sufficient to state a cause of action under the cited statutory provision. The judge noted that the statute did not require the record to contain the identity of the transferee; that the gist of the alleged offense was defendant's failure to keep the required record and not his failure to produce it for inspection upon the demand of a peace officer; and that the inference of a knowing transfer was warranted by the facts established by the State and constituted proof of the offense charged beyond a reasonable doubt. The motion was thereupon denied as to the State offense, which is the only matter before us for review.

In view of our disposition of this case, it is unnecessary for us to consider the motion for a reduction of sentence.

On this appeal, the three principal contentions of defendant are identical to his contentions on his post-trial motion in arrest of judgment and for a new trial.

OPINION

■■ We deal first with defendant's challenge to the legal sufficiency of the complaint. The only ground for that challenge which has any potential merit is that the body of the complaint merely alleged a street address as the location of the offense charged, without locating that street address in any city, county or State.[3] This omission is alleged to have two fatal effects: (1) the complaint thereby fails to allege that the named accused is a person "within this State," which is an essential element of the charge under the statutory provision; and (2) the complaint thereby fails to allege venue in Cook County so that the circuit court of Cook County may see that it has jurisdiction of the offense charged.

■■ We first set out the caption of the complaint as distinguished from its body:

---

[3] The offense charged was the failure to keep the required record of the transfer of the shotgun, not the failure to produce such record for inspection upon the demand of a peace officer. Hence, the failure to allege the latter circumstance is irrelevant, since there are two independent ways in which the statutory provision may be violated. Since the charge was, not that defendant kept a defective record which failed to include one or more of the statutorily required contents, but rather that defendant kept no record whatever, there was no occasion to allege the required contents of the record. Finally, the statute makes no reference to the identification of the transferee by name.

"STATE OF ILLINOIS⎱
⎰ ss
COUNTY OF COOK⎱

THE CIRCUIT COURT OF COOK
COUNTY"

We note next that there was no conflict between the caption and the body of the complaint as to the State and county involved. We note further that, while there was in this case a suggestion that the venue was both improper in fact and not properly proved, we see no merit in that suggestion. Where the offense charged is the failure of a named person to keep a required record, the offense must of necessity occur at the place of residence of the accused; and the place of residence of the instant accused was sufficiently proved, both by the testimony of Investigator Zelkovich and by the testimony of defendant himself, to have been at 8020 South Lafayette Street, Chicago, Illinois. We note finally that there was no showing of any actual prejudice to defendant in being tried in the circuit court of Cook County.

■■ With the above observations, we conclude that there is, therefore, no reason to refuse to read the caption as part of the complaint. So read, the complaint sufficiently designates both the county and State in which the offense was alleged to have been committed. (*People v. Williams* (1967), 37 Ill.2d 521, 229 N.E.2d 495; *People v. Adams* (1969), 109 Ill. App.2d 385, 248 N.E.2d 748;[4] *People v. Doss* (1974), 17 Ill.App.3d 57, 308 N.E.2d 3 (abstract opinion).) We find no merit in defendant's challenge to the legal sufficiency of the complaint.

■■■ We turn now to defendant's second principal contention on this appeal, namely, that the State failed to prove beyond a reasonable doubt two essential elements of the offense charged: (1) that any peace officer had ever demanded of defendant that he produce the required record for inspection; (2) that defendant had made a knowing transfer of the described shotgun. It is clear from the complaint that defendant was accused merely of having failed to keep the required record, and that he was not accused of having failed to produce such a record for inspection upon the demand of a peace officer. It is, therefore, simply not true that the latter charge was an essential element of the offense described in section 3(b) (ch. 38, par. 83—3(b) because that paragraph

---

[4] In *Adams*, the legal sufficiency of the complaint was first challenged in a post-trial motion in arrest of judgment. There is no suggestion in that opinion that a challenge at this stage of the proceeding came too late. In addition, in *Williams, supra,* the court noted that venue, in the respect that the county in which the offense is alleged to have been committed must be stated with sufficient precision to enable the court to see that it has jurisdiction of the offense, was deemed a matter of substance and "has been given a jurisdictional cast". *People v. Williams, supra,* at 524. It is elementary that jurisdiction may be challenged at any time and even collaterally.

in fact describes two independent offenses and defendant was not charged with the commission of the second of those offenses. Hence, the failure of the State to prove the second offense under the statutory provision is irrelevant.

That leaves us with the contention that the State failed to prove beyond a reasonable doubt that defendant made a knowing transfer of the shotgun. It is quite clear that the State's theory of the case was that defendant had made a knowing transfer. Prescinding entirely from defendant's testimony, we examine the State's evidence. We find that the State's case boils down to two facts, an inference therefrom, a presumed third fact, and an inferred fourth fact. The first fact is that in July of 1970 defendant was the owner of the shotgun and possessed it in Chicago, Illinois. The second fact is that in November of 1970 the shotgun was in the possession of one Leonard Thomas and one Melvin Boyd in Carbondale, Illinois. The inference from these two facts is that, in the interim, defendant made a knowing transfer of the shotgun to the said persons. The presumed third fact is that, during the time between July and November of 1970, defendant was a person within this State. That presumption rests upon the fact that, in July of 1970, defendant gave as his address the street address of a house in Chicago, Illinois. The presumption is that that address continued to be his address until there is some evidence to the contrary. While at some time after November of 1970, Investigator Zelkovich had been told that defendant no longer lived at that address, there was no evidence to rebut the presumption that defendant had maintained that address between July and November of 1970. The inferred fourth fact is that defendant kept no record of the said transfer. The basis for the inference is the testimony of Investigator Zelkovich that, in August of 1971, defendant himself reported to the Chicago police that it was only in August of 1971 that he had first discovered that the shotgun was no longer in his possession. The inference is that he could not have kept a record of a transfer which occurred at some time between July and November of 1970 when by his own representation he had not been aware of any transfer until August of 1971.

The testimony of Investigator Zelkovich and of Carbondale Detectives Hill and Staffy, if believed, sufficiently established the first two facts plus the presumed third fact and the inferred fourth fact. On analysis, therefore, the only real problem is the inference sought to be drawn from the combination of the first and second facts.

Before addressing ourselves to that problem, we note a threshold problem as to the construction of the statutory provision which defendant is alleged to have violated. The problem is that the statute refers simply

to a transfer of a firearm. The statute does not specify whether the transfer referred to is a transfer of ownership or a transfer of actual possession. There is an obvious difference between the two; there may be a transfer of ownership with or without a transfer of actual possession, and there may be a transfer of actual possession with or without a transfer of ownership. While the statute provides that, under certain circumstances, the required record must contain the transferee's Firearm *Owner's* Identification Card number, we think this incidental allusion to ownership does not warrant a construction that the statute applies solely to a transfer of ownership. Since a transfer as such applies equally to a transfer of ownership and to a transfer of actual possession, we construe the statute to apply to either type of transfer.

There is no evidence in this case of a transfer of ownership of the shotgun. What the State proved here was simply that, at some time between July and November of 1970, there had been a transfer of the actual possession of the shotgun. The inference which the State seeks to establish from that mere fact of transfer of actual possession is that defendant had knowingly made that transfer. That inference is an essential element of the State's case because defendant's failure to keep a record of that knowing transfer was the offense with which the State charged defendant.

Even under the doctrine of *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill.2d 494, 229 N.E.2d 504, we think the inference was sufficiently warranted to justify the trial court's denial of defendant's motion for a directed finding, made at the close of the State's case-in-chief. We hold that the denial of the motion was not error.

■■ But we cannot agree that the said inference of a knowing transfer by defendant established that fact beyond a reasonable doubt. Where the State's case is circumstantial, proof beyond a reasonable doubt requires the exclusion of every reasonable hypothesis, based on the evidence or on the absence of evidence, which is consistent with defendant's innocence. (*People v. Cortez* (1975), 26 Ill.App.3d 829, 326 N.E.2d 232.) Prescinding from defendant's testimony, the hypothesis that the transfer of the actual possession of the shotgun was unknown to defendant constituted a reasonable hypothesis fully consistent with the facts established by the State in its case-in-chief. While common experience indicates that, where a transfer of the actual possession of a chattel has occurred, the odds are that the transfer has been knowingly effected by the prior possessor, still common experience also indicates that in a significant number of cases the transfer has not been knowingly effected by the prior possessor but has effected either by mischance or by someone else without the knowledge or consent of the prior possessor.

People do lose things or have them stolen. As a result, the latter potential constitutes a reasonable hypothesis where the proof merely establishes the fact of the transfer of actual possession. In the instant case, the reasonableness of the latter potential is enhanced by the absence of any evidence linking defendant to anyone in Carbondale and specifically to one Leonard Thomas or one Melvin Boyd who, according to Carbondale Detective Hill, were the possessors of the shotgun in Carbondale.

■■ Adverting now to defendant's testimony, he was clearly contending that the transfer of actual possession of the shotgun, which must have occurred between July and November of 1970, was not even known to him until August of 1971 and therefore did not constitute a knowing transfer by him. Except for one point (namely, that he had told the desk sergeant that he had seen the shotgun in the attic in May of 1971), his testimony was internally consistent. As to the one point just mentioned, he conceded that he must have been in error. The trial court as the trier of fact found defendant's testimony incredible. But, as our Supreme Court said in *People v. Jordan* (1954), 4 Ill.2d 155, 163, 122 N.E.2d 209, "The rejection of defendant's testimony by the jury still does not have the effect of supplying proof of defendant's guilt beyond a reasonable doubt sufficient to sustain the conviction of defendant." As applied here, the trial court's rejection of defendant's testimony that he had not knowingly transferred the actual possession of the shotgun to any other person either at any time or between July and November of 1970 and that he had not even been aware of the transfer until August of 1971 does not constitute evidence for the State that he had knowingly transferred the actual possession of the shotgun so as to exclude the reasonable hypothesis that he had not. The State must exclude that reasonable hypothesis by its own evidence and it did not do so.

■■ Moreover, where as here the State's case is purely circumstantial and where the defendant's sworn testimony in support of his innocence is both internally consistent and consistent with all the facts established by the State and is neither directly contradicted nor inherently improbable nor is the defendant-witness' credibility impeached, such testimony may not be disregarded solely because the trier of facts finds the defendant-witness incredible. *People v. Jordan; People v. Cortez.*

For the foregoing reasons, we conclude that the State's evidence was not legally sufficient to prove defendant guilty as charged beyond a reasonable doubt and we reverse defendant's conviction and sentence.

Judgment reversed.

DOWNING, P. J., and LEIGHTON, J., concur.