THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WILLIAM ARTHUR BROWN, a/k/a Derricke Brewer, Defendant-Appellant.

Fourth District No. 4—87—0168

Opinion filed December 10, 1987.

Daniel D. Yuhas and Judith L. Libby, both of State Appellate Defender's Office, of Springfield, for appellant.

Jeffrey K. Davison, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

After a jury trial, defendant was found guilty of the offenses of theft with a prior burglary conviction, a Class 4 felony, and battery. (See Ill. Rev. Stat. 1985, ch. 38, pars. 16—1, 16—1(e)(1), 12—3(a)(1).) The court sentenced defendant to concurrent terms of three years' imprisonment for the theft conviction and six months' incarceration for the battery; and further ordered the three-year sentence for theft be served consecutive to a five-year sentence imposed for burglary in Macon County case No. 86—CF—288. Defendant appeals from the judgment of the circuit court raising numerous allegations of error. We reverse and remand for a new trial.

We first address defendant's reasonable doubt arguments and the question of the sufficiency of the evidence to sustain his conviction of theft with a prior burglary conviction and of battery. If the evidence is not sufficient to justify a reasonable jury determination that defendant's guilt was proved beyond a reasonable doubt, we must reverse without remandment and need not consider defendant's other assertions. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) We conclude the evidence supported the verdicts of guilty on each of the offenses.

Patricia Lord testified that on Saturday, September 27, 1986, about 2:30 p.m., she was going into the Jewel store when a man ran into her and knocked her into the door casing, bruising her on her left side under her arm. She identified defendant as the man who shoved her as she was entering Jewel.

Bill Howell, security officer for Jewel and Osco, testified that on September 27, 1986, at about 2:30 p.m., there was a theft of a stereo system by defendant from the store. Howell identified People's exhibit No. 2 as a photograph he took of the stereo, and said the model taken, a Lloyd's compact stereo, was sold by Osco and carried an Osco price tag for $129.95.

Howell testified he saw a black subject standing around the stereos in aisle 19, moving the boxes around. Howell said when the subject picked up a box and took it toward the checkout, he left the catwalk above aisle 19, went to the front of the store and stood by the checkout lane for Jewel, and observed the person with the stereo box to see what he would do. Howell testified that within two or three minutes the man, whom he identified as defendant, came to the exit. According to Howell, defendant passed the checkout lane (and the clerk working in it) and went to the exit, carrying the box with the stereo in it. Howell said when defendant got to the exit, Howell showed defendant his badge and identification and asked if there was

a receipt on the box. Howell said at that point defendant turned around and threw the box at Howell, which deflected off Howell and landed in a cart directly behind him. Howell testified as he turned to grab defendant before he went out the door, two ladies approached on his right, getting between Howell and defendant.

Howell said at that point defendant pushed one of the ladies in front of him so defendant could get out the door. Howell said he thought the woman fell to the right, since he side-stepped and went around her so he would not step or fall on her.

Howell testified defendant ran toward the east entrance of the mall and he yelled at defendant not to run and gave chase. Howell said as defendant ran through the mall, two other Jewel employees saw Howell chasing defendant and joined the chase. Howell said they captured the defendant, who continued to fight, and they handcuffed him to bring him back to the store.

Howell testified he did not observe defendant pay for the stereo. Howell said at first the defendant said he had money and would pay for the item, and later changed his mind and said he did not have any money.

The court received People's exhibit No. 2, the photograph showing the Lloyd's stereo, into evidence. The court also received into evidence the State's exhibit No. 1, an authenticated record of conviction in the case of People v. William Brown, case No. 86—CF—288, and informed the jury that according to the exhibit, on August 19, 1986, the jury in that case returned a verdict finding defendant William Brown guilty of burglary.

Defendant presented no evidence. The jury returned verdicts finding defendant guilty of both the offense of theft with a prior burglary conviction and the offense of battery.

With respect to his conviction of theft with a prior burglary conviction, defendant acknowledges security officer Howell testified he saw defendant pick up the box containing a compact stereo, bypass the checkout, and approach the west exit of the store without paying for it. Defendant nevertheless argues that since on being questioned about the stereo he "immediately surrendered it," the State's evidence failed to show either that he (1) knowingly exerted unauthorized control over the property, or (2) intended to permanently deprive Osco of it.

■■■ Criminal intent to commit an offense must often be proved circumstantially, and whether intent has been proved is a question for the trier of fact. The intent to permanently deprive may be inferred simply from the act of taking another's property. Even when such an

inference may be deemed rebutted by proof of the existence of a state of mind incompatible with the intent to steal, the trier of fact is not required to accept the defendant's version of the facts. See *People v. Heidorn* (1983), 114 Ill. App. 3d 933, 935, 449 N.E.2d 568, 571-72 (and cases cited therein).

Defendant cites *People v. Cortez* (1975), 26 Ill. App. 3d 829, 832-33, 326 N.E.2d 232, 235, wherein the defendant's theft conviction under section 16—1(a)(1) of the Criminal Code of 1961 was reversed. The reviewing court in *Cortez* found the defendant's innocent explanation accounted for all circumstances in evidence and was highly persuasive, his credibility was not otherwise impeached, his explanation was substantially corroborated and it was uncontradicted. (26 Ill. App. 3d at 832-33, 326 N.E.2d at 235.) *Cortez* is distinguishable. Here, the State's evidence was uncontradicted.

In this case, as in *Heidorn*, defendant was continuously watched after he picked up the merchandise and did not pay for it. The security guard testified defendant passed the checkout lane where a clerk was working without paying for the merchandise, and the guard did not stop defendant until he was near the door to exit the store. Defendant's response when stopped was to throw the 2½-foot square box containing the stereo at the security guard and bolt out the door, knocking an incoming woman customer to the side of the door as he did so. After defendant was apprehended by the security guard and two other Jewel employees, he first offered to pay for the merchandise and said he had the money, and later said he did not have any money.

■ There was more than sufficient evidence from which the jury could conclude defendant both exercised unauthorized control over the stereo and intended to permanently deprive Osco of it. As pointed out by the State, no evidence of an alternative explanation was presented to the jury by defendant.

Defendant next maintains his flight after being approached by security guard Howell should not be construed to show a guilty mental state since he was a fugitive at the time—having been sentenced *in absentia* the day before in case No. 86—CF—288, with his bond forfeited and a warrant issued for his arrest—and his flight could reasonably be viewed as connected to the prior burglary conviction, rather than possession of the stereo. The prosecutor did not argue defendant's flight from the store could be considered as evidence in support of his guilt on the theft charge and made no reference in closing argument to defendant's flight.

■ Defendant next maintains the State failed to prove him guilty

beyond a reasonable doubt of battery, arguing the evidence failed to show (1) he acted knowingly when he shoved the victim, and (2) pushing and shoving are insufficient to prove battery (citing *People v. Eichelberger* (1980), 81 Ill. App. 3d 1012, 401 N.E.2d 1208). Defendant contends in addition to requiring proof of bodily harm, to convict him of battery the State must prove he acted knowingly, citing *People v. Jones* (1978), 67 Ill. App. 3d 477, 384 N.E.2d 523. The Committee Comments to section 12—3 of the Criminal Code of 1961 state:

> "Note that a battery can be committed 'by any means' (see Reg. v. Cotesworth, 6 Mod.Rep. 172 (1705)—spitting in prosecuting witness' face), which 'causes bodily harm to an individual,' or by making physical contact of an 'insulting or provoking nature.' The intent here is to limit the traditional 'barest touching' which does not cause bodily harm to one of 'an insulting or provoking nature'." (Ill. Ann. Stat., ch. 38, par. 12—3, Committee Comments, at 440 (Smith-Hurd 1979).)

The intent element of battery, *i.e.*, the intentional or knowing conduct, may be inferred from the circumstances of the offense as presented in evidence. No authority cited by defendant requires reversal on the grounds of reasonable doubt, since there was evidence which permitted the trier of fact to conclude defendant committed an act within the meaning of the statute and to draw the inference of intent, and no contradictory evidence was presented. *Eichelberger* is distinguishable on its facts since there the reviewing court reversed the conviction on finding the testimony of a 14-year-old complaining witness so implausible and contrary to human experience as to cast reasonable doubt on defendant's guilt. The reviewing court was not convinced the 14-year-old sustained a broken nose or a facial injury or was punched in the face by the adult defendant where, when questioned by a police officer, the 14-year-old merely stated he had been pushed or shoved.

Defendant next argues (1) the State failed to prove his guilt of theft with a prior burglary conviction in case No. 86—CF—288 because the information stated the burglary conviction was on August *9*, 1986, whereas the authenticated copy of the burglary conviction showed it was on August *19*, 1987; and (2) the State failed to prove his guilt of battery because the information charged he struck the victim *with his fist*, whereas the evidence only showed he shoved and knocked the victim to the side as he ran past her. These objections are raised for the first time on appeal.

We find these variances between the informations charging defendant and the evidence produced at trial do not require reversal

on reasonable doubt grounds. (See *People v. Alexander* (1982), 93 Ill. 2d 73, 77, 442 N.E.2d 887, 889; *People v. Jones* (1987), 162 Ill. App. 3d 487; *People v. Turner* (1976), 36 Ill. App. 3d 77, 80, 343 N.E.2d 267, 270; *People v. Price* (1971), 132 Ill. App. 2d 733, 270 N.E.2d 565; *People v. Bradley* (1966), 70 Ill. App. 2d 281, 287-88, 217 N.E.2d 434, 437-38; *People v. Coleman* (1971), 49 Ill. 2d 565, 569-70, 276 N.E.2d 721, 723-24; *People v. Givens* (1985), 135 Ill. App. 3d 810, 817, 482 N.E.2d 211, 216-17; *People v. Jordan* (1981), 102 Ill. App. 3d 1136, 1140, 430 N.E.2d 389, 391; *People v. Carter* (1978), 57 Ill. App. 3d 84, 88, 372 N.E.2d 1093, 1097.) Since we are reversing the judgment and remanding the cause for a new trial, such variances between the informations and proof may be the subject of a motion for amendment pursuant to section 111—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 111—5).

■ Defendant next argues he was deprived of a fair trial by the trial judge's remarks regarding his right to a jury of his peers as not including a jury of burglars and felons. Defendant does not complain the court erred by informing the jury he was charged with the offense of theft with a prior burglary conviction, as stated in the information, or in allowing the State to put on proof of the prior burglary conviction as part of its case in chief. Rather, defendant maintains the court's unnecessary and repeated emphasis during *voir dire* that he was a convicted felon and a convicted burglar so denigrated his right to a trial by an impartial jury that fundamental fairness requires a new trial.

Defendant relies on cases which have held prosecutorial conduct which places undue emphasis on a defendant's prior conviction or sentence may amount to reversible error (*People v. Slaughter* (1980), 84 Ill. App. 3d 88, 404 N.E.2d 1058 (wherein, on charges of escape and intimidation, State improperly emphasized conviction for which defendant had been initially imprisoned was murder for which he had been sentenced to 100 to 300 years' imprisonment)). Conduct by a court bailiff can also amount to reversible error (*Parker v. Gladden* (1966), 385 U.S. 363, 17 L. Ed. 2d 420, 87 S. Ct. 468 (wherein bailiff's comments to individual jurors included his opinion that defendant was guilty and any errors in finding defendant guilty would be corrected by the supreme court)).

Defendant acknowledges considerable latitude must be allowed a judge to conduct a trial, but contends that if the judge's conduct or remarks would ordinarily create prejudice in the minds of the jury, reversal is warranted.

Defendant relies on *Reske v. Klein* (1961), 33 Ill. App. 2d 302,

312-13, 179 N.E.2d 415, 420 (a personal injury case), *People v. Santucci* (1962), 24 Ill. 2d 93, 99, 180 N.E.2d 491, 493-94 (court interrogated each and every witness who testified, in some instances causing reiteration and emphasis on testimony which pointed to defendant's guilt and, in another, casting discredit upon a key witness for the defense, and also made remarks to defense counsel of a nature as to show impatience, if not hostility, to the manner in which the defense was conducted), and *People v. Zaccagnini* (1963), 29 Ill. 2d 408, 410, 194 N.E.2d 286, 287 (conduct of trial judge; record showed judge harbored feelings of hostility and prejudice against defendant and his counsel demonstrated throughout trial).

The State argues (1) defendant has waived this issue since he neither objected to the remarks when they were made, nor raised them in his post-trial motion, citing *People v. Long* (1968), 39 Ill. 2d 40, 43, 233 N.E.2d 389, 391, and other cases; and (2) the cases relied on by defendant are distinguishable.

At the preliminary hearing on October 16, 1986, defendant advised his attorney, a public defender, that he wanted to proceed *pro se*. The trial court admonished defendant pursuant to Supreme Court Rule 401 (107 Ill. 2d R. 401) and defendant waived representation by counsel. On December 8, 1986, the case was called as to the pending jury trial and the State declared it was ready. Defendant made an oral motion for a change of venue, which the court denied as without any basis in evidence, and defendant stated he could be ready for trial if he could have a "jury of peers."

At the inception of the jury trial on December 19, 1986, the clerk of the court drew 12 jurors' names and the court gave some general information on serving as a juror and read the informations in the case. The first panel of four prospective jurors was questioned by the court, accepted by the State, and tendered to defendant for questions or the exercise of peremptory challenges. At this point, the following colloquy took place:

"[The Court]: *** Do you have questions you want to ask the first panel, Mr. Brown?

THE DEFENDANT: I have questions to ask, but not necessarily addressed to the panel.

THE COURT: Well, this is the point that you question the panel, ask them about anything affecting their right—their—affecting their position of being fair and impartial. Do you have any question to ask anyone of the first panel about his being a fair juror?

THE DEFENDANT: Yes, I would. I would address the

questions to the jury. I don't believe that you could give me a fair trial. I would like a jury of my own peers, and I don't see that.

THE COURT: That wasn't a question. That was a statement.

THE DEFENDANT: Yes.

THE COURT: And, your questions. All right. If you have no questions, next come around, do you want any in the first panel excused keeping in mind you have a right to excuse seven jurors without any statement of cause or reason. Do you *** are you excusing any of the first four members?

THE DEFENDANT: *I would like to serve [sic] the first all eleven members.*

THE COURT: Well, let's—let's stop right now. You are—you have a right *** we're going to keep this procedure. The jury trial is what has been offered to you, and it's a matter of you exerting your right; and you have a right to a jury trial. But, we're not going to have a jury trial if you say, 'I don't want any jurors.' So, that's *** we're not *** if you don't want a jury trial, that's another thing. But, if you want a jury trial, right now *we're selecting a jury; and they're from a cross section of this community.* Now, do you want any of the first four excused on peremptory challenge?

THE DEFENDANT: Your Honor, as—*as to my a—last appearance in your courtroom, I stated that I would like a jury of my own peers*; and I also stated to you that I would like a change of venue because I felt that you would be prejudice in trying ***

THE COURT: You didn't say me, you said want a change of venue to get a jury of your peers. It is my opinion you have a jury of your peers. We have a cross section of the community, and peers mean of equal people. Now, *I don't think we have any on this jury who have a burglary conviction because* they're dis—*they're ineligible to serve if they have a felony conviction. So, I'm sure peers, you mean you'd like people who stand convicted of burglary. We do not have any jurors who have since been guilty of burglary, if that's what you mean by peers. Because when they're convicted of burglary, they lose their right to serve as jurors.*

THE DEFENDANT: *I'm a minority.*

THE COURT: And, *we're not going to have any juror [sic] available of people who if your peers mean convicted of bur-*

*glary.* It's not possible.

THE DEFENDANT: No. I mean you have—*you have eleven Whites and one Black*, and I don't think that's fair trial.

THE COURT: *Percentage-wise, they are cross section of the community*; and percentage-wise, *I can see in the first panel we have one out of four. That's twenty-five percent which is higher than our population of Blacks in Macon County*, if I am correct. Now, let's proceed. Do you want any of those four excused?

THE DEFENDANT: Your Honor, I have nothing to say.

THE COURT: Then, we'll proceed to the second panel." (Emphasis added.)

The court treated the four jurors as accepted and proceeded to questioning a second panel of four. When a second panel of four had been accepted by the State and was tendered to defendant, the following colloquy occurred:

"THE COURT: All right. Then, we turn to the defendant. First, are there any questions you want to ask any of these jurors in the second panel?

THE DEFENDANT: No, there are not.

THE COURT: Are there any you want to excuse?

THE DEFENDANT: All of them.

THE COURT: Very well. We will let the second panel be excused on peremptory challenge until Monday. You will be excused, come back Monday. We will show he excused four on his peremptories."

Four more jurors were questioned by the court and, when tendered to defendant, the following colloquy ensued:

"THE COURT: *** Are there any questions you want to ask of this second panel about their competency to serve as jurors?

THE DEFENDANT: No. I don't have any questions.

THE COURT: No questions. Then, the next, do you want any of them excused?

THE DEFENDANT: All of them.

THE COURT: Well, it so happens you have only three more peremptories. So, you can excuse only three out of four without cause. So, you may select which three of the four you want excused in that you don't ***

THE DEFENDANT: I don't even see. I'm in the courtroom, you know. I can't pick no jury you would like. So, you pick them.

THE COURT: Repeating my question, do you want any of

the second panel excused based on your right to excuse seven?

THE DEFENDANT: *My first right was to have a jury of my own peers, and that right has been violated.* So, you might as well violate the rest of them.

THE COURT: We're not going to have repeated all the time. I explained *this is cross section of the community, both races.* They're not drawn who they are, they're drawn by computer; *and again, by what you mean by peers, if you mean people who have been convicted of felonies, we cannot have such.*

THE DEFENDANT: *People of minority race.*

THE COURT: *You have already one of the minority race in the first panel.* I don't know. She was not deleted because of race. Do you want to excuse any of the second panel?

THE DEFENDANT: It appears I don't have any say so in the matter.

THE COURT: You have three that you can excuse on your seven peremptories. Do you want to exercise any of your peremptories?

THE DEFENDANT: *Your Honor*, I'm not a scholar in law. But, *at this time, I feel I do need an attorney.*

THE COURT: Mr. Brown.

THE DEFENDANT: They know more about my rights than I do.

THE COURT: *We discharged your attorney on your request.*

THE DEFENDANT: *I now vacate that request and ask for an attorney.*

\* \* \*

THE COURT: I recall you had Mr. Coryell.

THE DEFENDANT: That's right.

THE COURT: He is now presently in a jury trial.

THE DEFENDANT: And, I do not wish to have him now.

THE COURT: Well, we can't let you just select whoever you would choose in that there's some counsel who wouldn't be available. I think Clarence Darrow who is No. 1 as criminal defense has long since been deceased. There are others who are not available who may be nationally known. We again have a staff of public defenders, and they change among themselves according to their commitments. At this point, let me make \* \* \* I was going to see if I could get Mr. Coryell who was in the case for sometime if he's available. He is in trial. But, I was going to try to see when he's available. Are you saying you

wouldn't accept his services?

THE DEFENDANT: No, I wouldn't." (Emphasis added.) Thereupon, the court declared a 10-minute recess and discussed defendant's objections with defendant, the prosecutor, and the court reporter, outside the presence of the jury.

After careful consideration of the court's conduct of *voir dire*, we conclude defendant's argument on this issue has merit. Despite the strength and uncontradicted nature of the evidence, we hold it warrants reversal of the judgment and remand for a new trial on both counts. In the colloquy with the court when the first panel of four veniremen was tendered to defendant, upon the court's *first statement* that a jury of peers does not permit a defendant to have a jury of convicted burglars and felons, the defendant responded, "I'm a minority." This may be viewed as an objection to the court's interpretation of defendant's objection to the tendered panel. The trial judge's comments thereafter to the same effect, *i.e.*, that a defendant is not entitled to a jury of felons, were inexcusable and constitute reversible error.

It has often been held that a criminal defendant is entitled to a fair trial and not a perfect one. (See, *e.g.*, *United States v. Hasting* (1983), 461 U.S. 499, 508-09, 76 L. Ed. 2d 96, 106, 103 S. Ct. 1974, 1980.) Our holding is consistent with this principle, as we conclude the judge's further remarks in this connection displayed an attitude toward the defendant which deviated from the demeanor of impartiality required of a judge toward the end of ensuring a fair trial. The fact that the State proved the defendant's prior burglary conviction in case No. 86—CF—288 as an element of the theft with a prior burglary charge does not cure the error created by the tone the court's remarks set before the trial began.

We recognize the difficulty in managing jury selection and a jury trial with a *pro se* defendant. We also recognize the frustrations inherent in dealing with *pro se* defendants who change their minds about needing counsel, and whose unschooled observations and objections make the trial judge's job more difficult. Nonetheless, a trial judge has an obligation to treat all litigants in a courteous and evenhanded manner. The trial judge here repeated three times that a jury of peers does not mean a jury of convicted burglars or felons. Such comments in the presence of the jury demeaned the defendant and the importance of jury selection. The trial judge also remarked, when defendant expressed a need for an attorney, that Clarence Darrow would not be available because he was deceased. Such remarks serve no purpose but to let the jury know the trial judge's opinion of defendant's effort

to assert his rights. The defendant did not receive a fair trial.

Given our resolution of this issue, we need not discuss the other issues raised by defendant. We note, however, on the consecutive sentence issue that it would be helpful to reviewing courts if the record of the sentencing hearing in cases of this nature showed *formal presentation* to the trial court of the conviction which forms the basis for imposition of consecutive sentence. Earlier "prior offense cases" where the prior conviction was proved at sentencing to prove the enhanced degree of the charged offense, instead of as an element of the offense at trial, may be of guidance in this connection.

For the reasons set forth above, we reverse the judgment of the circuit court and remand this cause for a new trial.

Reversed and remanded.

SPITZ and McCULLOUGH, JJ., concur.